# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TROY DELONE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-2035** |
| **N. BURL CAIN, WARDEN** | **SECTION "C" (1)** |

## ORDER AND REASONS

This matter is before the Court on a petition for writ of habeas corpus by Troy Delone, seeking relief pursuant to 28 U.S.C. § 2254.  The petitioner claims as grounds for relief that 1) his Sixth amendment rights to effective assistance of counsel and Fourteenth amendment right to a fair trial were violated when his trial counsel failed to investigate alibi witnesses, and 2) there was insufficient evidence presented at trial to support the verdicts of guilty as charged on two counts of armed robbery and the state failed to negate any reasonable probability of misidentification.  Upon a thorough review of the trial, direct appeal, post-conviction record, the habeas petition and memoranda, and applicable law, the Court has determined that petitioner's habeas corpus petition is without merit. For the reasons set forth below, this petition is DENIED WITH PREJUDICE.

I. Background and Procedural History

The petitioner is a prisoner of the state confined to the Louisiana State Penitentiary in Angola, La.   Fed. Rec. Doc. 1  He filed this federal application for writ of habeas corpus on February 27, 2006.  *Id.* at 20.[1]   Petitioner was found guilty of two counts of armed robbery in violation of La. Rev. Stat. § 14:64, and one count of attempted intimidation of a witness in violation of La Rev. Stat. 14:129.1 in the Criminal District Court for the Parish of Orleans, State of Louisiana on February 15, 2001.  State Rec. Volume 4.

The following facts are taken from the Statement of Facts of the Louisiana Fourth Circuit Court of Appeals:

> On the night of October 15, 1999, Cindy Cole exited a cab and was entering her apartment with her two young children when the defendant came out of an adjacent abandoned house and entered her apartment.  The defendant held Ms. Cole at gunpoint and demanded money, threatening to kill Ms. Cole or a member of the household if he did not get what he wanted.  Ms. Cole gave the defendant $320, all the money she had in the house.  After describing the defendant to a neighbor, she was told his street name was T-Roy. A few days later, Ms. Cole reported the crime to the project office, noting this delay was due to fear of reprisal.  An incident report was made by Officer Roland Doucette. Cole stated that she had seen the defendant on numerous previous occasions and that on one occasion he used her telephone.  A few days later, Cole viewed a photographic lineup and identified Troy Delone as the perpetrator.  Delone was arrested on October 20, 1999 at his mother's house.  The police conducted a search incident to arrest of the bedroom where Delone was found sleeping at the time of the arrest and a limited search of the mother's home with her permission. No evidence was recovered.  The police also conducted a search of defendant's girlfriend's apartment and again, no weapons or stolen property was recovered.
> On February 6, 2000, at approximately 5:50 a.m. Cindy Cole asked her younger brother, Prosper Cole, to go to the store with her to get some formula for her baby.  Prosper Cole went outside of the apartment ahead of Cindy Cole.  Troy

---

[1] See discussion of timeliness and the this Court's application of the "mailbox" rule for the date of filing, below.

Delone emerged from an adjacent abandoned house with a gun demanding Prosper enter the building.  Ms. Cole stated that upon exiting her apartment, she saw Delone pointing a gun at her brother.  She noted that Delone's two accomplices were in the doorway of the abandoned apartment an that one of them had a gun.  Once Prosper Cole was inside, Delone took his jacket and his shoes, a chain and some money.  Delone wanted his pants as well, which Prosper Cole began to remove until the [sic] one of the other two said, "No, its too cold, pull them back up."

Delone told Prosper Cole to run whereupon he ran out the back door and Cindy Cole ran back into her house.  Ms. Cole then phoned the police.  Ms. Cole and another sibling then walked to a nearby store where Prosper had fled, calling Cindy upon his arrival.  While returning the Coles observed the three assailants standing in a dark area watching them return home.  The three attackers remained outside the Cole home until the police arrived.

Prosper cole told police that he had never seen any of the three individuals before but that he had only moved in with his sister two months before the robbery.  Cindy and Prosper were separately shown photographic lineups of the defendants and each identified the three defendants as the attackers.  Prosper testified that his identification of Delone was almost immediate upon viewing the lineups.  Prosper stated that Delone was the only one talking during the robbery and that Delone was the closest to him.

Cindy Cole testified that after the identification following the February robbery, the father of her child brought Delone to her home where the defendant denied committing the offense and offered to pay her back for what was taken from her.  Ms. Cole stated that a few days later, as she was walking across the courtyard to her building, the defendant approached her and asked if she was going to go to court.  Cole ignored him.   Delone then stated if she were to go to court he was going to kill everybody in her house from the children on up.

Former co-defendant, Bradley Newman testified that he did not know Troy Delone and that he was not with him on February 6, 2000.  When asked why he had pled guilty to the felony of simple robbery, he stated that he did so in order to get out of jail.

Upon taking the stand, Troy Delone denied participation in either robbery as well as denying that he had ever had a conversation with either Prosper or Cindy Cole regarding those events.  Delone put forth an alibi for both dates in question.  Delone stated that he recalled the date and time of the first incident, when he was at a bar known as Club Escape.  The defense did not introduce any corroborating evidence or witnesses supporting Mr. Delone's assertion.  As to the February 6 incident Delone testified that he was again at Club Escape, this time celebrating a friend's birthday.  He stated that he became so intoxicated that his friends had to carry him home where he remained until late on February 6, 2000.

>Delone's girlfriend and the mother of his child, Tiffany Woods, testified in support of Delone's alibi as to February 6, 2000.  She stated that Delone was brought to her apartment at about 2:00 a.m. on the morning of the robbery.  Woods stated that Delone was intoxicated upon his arrival and that he passed out immediately.  She stated that he remained there until the following day.

Opinion of Louisiana Fourth Circuit Court of Appeals, May 15, 2002 at 2-4, State Rec. Vol. 2.

The state filed multiple bills as to all counts on February 22, 2001.  A multiple bill hearing was held on March 5, 2001 at which the trial court found petitioner Delone to be a third felony offender as to each count.  State Rec. Vol. 3,  at 33.  He was then sentenced to life at hard labor on count one (armed robbery), five years at hard labor on count two (attempted intimidation of a witness) to run concurrently, and to life imprisonment at hard labor on count three (armed robbery) to run consecutively with the sentence imposed on the first two counts.  *Id.*  Defense counsel immediately objected to the sentences as excessive, which was denied by the trial court.  Tr. of Plea of Guilty and Multiple Bill Sentencing, Mar. 5, 2001 at 9, State Rec. Vol. 2.  The trial court then granted a motion for appeal.  *Id.*  Petitioner's conviction and sentence were affirmed by the Louisiana Fourth Circuit Court of Appeal on May 15, 2002,  *State v. Delone*, 818 So.2d 325 (La. App. 4th Cir.), and the Louisiana Supreme Court denied writs on June 6, 2003.  *State v. Delone*, 845 So.2d 1084 (La. 2003).  Petitioner then filed an application for post-conviction relief in the Criminal District Court for the Parish of Orleans which was denied on December 14, 2004.  State Rec. Vol. 1.  The Louisiana Fourth Circuit Court of Appeal denied review on March 8, 2005.  *Id.*  Writs were denied by the Louisiana Supreme Court on February 10, 2006.  Petitioner then filed the instant habeas petition on February 27, 2006.

II.  PROCEDURAL REVIEW

### A. Custody Requirement

A petitioner must be "in custody" for a federal court to entertain a petition for habeas

relief. 28 U.S.C. § 2241(c); 28 U.S.C.§ 2254(a).  Physical incarceration satisfies the custody

requirement.  *See e.g., Maleng v. Cook*, 490 U.S. 488, 491, 109 S. Ct. 1923, 1925 (1989).  Here,

Petitioner is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, pursuant to

the conviction he is attacking.  Rec. Doc. 1.  Accordingly, one basis of this Court's subject

matter jurisdiction over Petitioner's claim for relief is satisfied.

### B. Timeliness

The state submits that the petition is untimely, but after reviewing the record the Court

disagrees.  The Anti-terrorism and Effective Death Penalty Act of 1996[2] (AEDPA) requires that

a habeas petitioner bring his or her 28 U.S.C.§ 2254 action within one year of the date on which

his or her conviction or sentence becomes final.[3]  Yet, AEDPA's one-year statute of limitations

---

[2] Pub. L. 104-132, Apr. 24, 1996, 110 Stat. 1214.

[3] 28 U.S.C.§ 2244(d) provides:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C.§ 2244(d)(2); *Fields v. Johnson*, 159 F.3d 914 (5th Cir. 1998). "A  properly filed application is one submitted according to the state's procedural requirements, such as the rules governing notice and the time and place of filing." *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999) (*quoting Lovasz v. Vaughn*, 134 F.3d 146, 148 (3rd Cir. 1998) (internal quotations omitted); *Williams v. Cain*, 217 F.3d 303 (5th Cir. 2000).  Finally, out of an abundance of caution, this Court construes any tolling ambiguities in favor of a petitioner.  *See, e.g.,  Navarre v. Stalder* 2007 WL 1702774, *5 (E.D.La. 2007).

The Supreme Court noted that "finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."  *Clay v. United States*, 537 U.S. 522, 527 (2003); *see also, Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003) (reaching the same conclusion regarding "finality.").  Additionally, a petitioner has ninety days to file a writ of certiorari in the United States Supreme Court after a decision is rendered by the state's highest court.  SUP. CT. R. 13(1). As noted above, the Louisiana Supreme Court denied Petitioner's application for a supervisory writ on direct appeal on June 6, 2003.   *State v. Delone*, 845 So.2d 1084 (La. 2003).  Therefore, Petitioner's conviction became final, and petitioner's one year period for seeking federal habeas corpus relief commenced on September 4, 2003, ninety days after the Louisiana Supreme Court's decision denying Petitioner's direct appeal.

In this case, AEDPA's one-year statute of limitations was tolled when the petitioner timely filed his applications for post-conviction relief on June 7, 2004, after the petitioner had expended 276 of the 365 day limit for seeking habeas relief.  After this was denied by the trial court on December 14, 2004, he filed an application for supervisory writs with the Louisiana Fourth Circuit on January 20, 2005.  Under the Uniform Rules of the Louisiana Courts of Appeal, Rule 4-3, petitioner was only allowed 30 days to seek writs from the adverse ruling, or until January 13, 2005.  The Louisiana Fourth Circuit , however, denied petitioner's application on the merits of the petition, rather than on untimeliness grounds, on March  8, 2005.  Petitioner then timely sought writs with the Louisiana Supreme Court, which denied the application on February 10, 2006.

The state argues that for AEDPA purposes, tolling of the statutory limit ceased when the petitioner failed to timely seek appellate review of the December 14, 2004 ruling by January 13, 2005, and that tolling did not resume again until the petitioner timely sought writs from the Louisiana Supreme Court on April 7, 2005 of the March 8, 2005 denial by the Louisiana Fourth Circuit.  As such, the petitioner had expended another 84 days of the 365 day limit, for a total of 360 days.  The petitioner was 7 days untimely in his application to the Louisiana Fourth Circuit. As a result, the state argues  that the entire period during which his claims were pending before the Louisiana Fourth Circuit was not "time during which a properly filed application for State post-conviction ... review...[was] pending " such that it should be tolled under 28 U.S.C. § 2244(d).  Instead that entire period was, in essence, a detour from tolling between the properly filed review by the trial court and by the Louisiana Supreme Court.

7

Under the law governing the issues presented in this situation, Delone's federal petition is clearly timely.   In *Melancon v. Kaylo*, 259 F.3d 401 (5th Cir. 2001), the federal habeas petitioner had filed his state post-conviction relief application to the Louisiana appeals court five months too late under Louisiana Uniform Rules, Courts of Appeal, Rule 4-3.   Nonetheless, the state appellate court considered his claim on the merits.   The Fifth Circuit reasoned that federal courts should not undermine a state's decision to hear the merits of a petition by later refusing to toll the period of limitations under § 2244(d)(1).  *Melancon*, 259 F.3d at 405, 405 n.3.   Because Rule 4-3 allows the state Court of Appeal to consider an application that was not timely filed and because the Court of Appeal did consider Melancon's application on the merits, the Fifth Circuit concluded that his application was "properly filed" in state court.  *See also Grillete v. Warden, Winn Correctional Facility*, 372 F.3d 765 (5th Cir. 2004) (affirming *Melancon*'s treatment of untimely applications under Rule 4-3 and subsequent appeals court review on the merits as "properly filed" under § 2244(d)(2)).

Here, the Louisiana Fourth Circuit Court of Appeals considered petitioner Delone's application for supervisory writ on the merits, without mentioning the timeliness issue at all. Thus this Court must not undermine that court's decision to hear the merits of his claim by now deciding that his state court application was not "properly filed."

The Fifth Circuit then considered the separate issue of whether Melancon's claim could also be considered "pending" during the lengthy period of time between the trial court's denial and the date when he finally "properly filed" his application to the Court of Appeal.  The Fifth Circuit first agreed with several other circuits that a finding that state applications are "pending"

8

after a disposition but before the timely filed appeal is a logical construction of the statute, and held that § 2244(d)(2) tolls the entire period allotted for timely state appellate review.  It concluded:

> At the point when the state limitations period expired, a petitioner is not entitled to further appellate review and, therefore he has no application "pending" in state court.  A state court's subsequent decision to allow review may toll the time relating directly to the application, but it does not change the fact that the application was not pending prior to the application.  Thus, after the appeal period has lapsed, an application ceases to be pending but a subsequent properly filed application entitles the petitioner to additional tolling beginning at the time of the "proper" filing.

*Melancon*, 259 F.3d at 407.   In this case, Delone's application to the Louisiana Fourth Circuit was "properly" filed because that court chose to consider his claims on their merits, and the time relating directly to that application was tolled, i.e., from January 20 to March 8, 2005.  In addition, the time after that disposition and before petitioner timely sought writs from the Louisiana Supreme Court on April 7, 2005 was also tolled.  However, because petitioner was no longer entitled to further appellate review after he failed to seek such review by January 13, 2005, his claim was not pending during that time.[4]  Delone thus expended an additional 7 days of the 365 day statutory limit between January 13 and his application to the Louisiana Supreme Court on April 7, 2005, and not 84 as the state argues.   Adding this to the 276 days he had expended prior to filing his application for post-conviction relief in the state district court, Mr. Delone had expended 283 days when the Louisiana Supreme Court denied his supervisory writ

---

[4] Petitioner does not assert, nor can this Court find, any special justification for his delay in filing until January 20, 2005 that would dictate that this time be tolled, as in *Dixon v. Cain*, 316 F.3d 553 (5th Cir. 2003) or *Grillete*, 372 F.3d 765.

application on February 10, 2006.

The state curiously counts another 24 days from February 10, 2006 to March 1, 2006 when the petition was post-marked.  Rec. Doc. 9, at 4.  Under this court's count, that period is only 19 days.  In addition, the petitioner signed his petition on February 27, 2007.  When considering the timeliness of a pleading filed by a prisoner acting *pro se*, courts employ the bright-line "mailbox rule", i.e., a pleading is considered to be filed for prescriptive purposes on the date it is delivered to prison officials for mailing, rather than the date it is received by the court.  *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Furthermore, it may reasonably be inferred that a prisoner delivered his pleading to prison officials for mailing on the date he signed it.  *See Pugh v. Cain*, 2007 WL 734811 (E.D. La.) (J. Berrigan), *citing United States v. O'Kaine*, 971 F.Supp. 1479, 1480 (S.D.Ga. 1997); *see also Magee v. Cain*, 2000 WL 1023423 (E.D.La) (J. Duval).  Therefore, in addition to the 283 already expended, another 17 days tolled from February 10, 2006 and February 27, 2007 when the petitioner signed his petition, for a total of 300 days, less than the 365 day statutory limit provided in 28 U.S.C.§ 2244(d).  As a result, the Court finds that Mr. Delone's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 is timely.

## C. Venue

Under 28 U.S.C.A. § 2241(d), venue lies in the district in which the petitioner is incarcerated or the district from which his conviction or sentence was obtained.  Petitioner is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, which is in West Feliciana Parish, a parish that falls within the Middle District of Louisiana under 28 U.S.C. § 98(b).

10

However, petitioner was convicted and sentenced in Orleans Parish, which under 28 U.S.C. § 98(a) falls within the Eastern District of Louisiana.  Therefore, venue lies for this petition under 28 U.S.C.A § 2241(d).

### D. Exhaustion

Petitioner's claims are exhausted as required by AEDPA. Indeed, the State concedes exhaustion.  Rec. Doc. 9, at 1.  However, an independent review regarding the exhaustion of Petitioner's claims is warranted, to advance the principles of federal-state comity. *See Shute v. Texas*, 117 F.3d 233 (5th Cir. 1997) (permitting a district court to decline the State's offer of a waiver of the exhaustion requirement). Generally, exhaustion of adequate state remedies is a "condition precedent to the invocation of federal judicial relief under [28 U.S.C.§ 2254]." *Preiser v. Rodriquez*, 411 U.S. 475, 489 (1973). To satisfy the exhaustion requirement, the entirety of the factual allegations and legal theories presented to the federal court must have been presented in a procedurally proper manner to the highest state court, here the Louisiana Supreme Court. *See e.g., Anderson v. Harless*, 459 U.S. 4, 6 (1982) (holding a habeas petitioner must have "fairly presented" to the state courts the "substance" of his federal habeas corpus claim (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Yohey v. Collins*, 985 F.2d 222, 226 (5th Cir. 1993); *Rose v. Lundry*, 455 U.S. 509 (1982).  It is important to note that the issues in a habeas petition could have been presented to the highest state court on direct appeal, or in a state post-conviction proceeding; either is sufficient and both are not required. *Brown v. Allen*, 344 U.S. 443, 447 (1953); *Myers v. Collins*, 919 F.2d 1074, 1075-77 (5th Cir. 1990).  The requirement of exhaustion is now codified by 28 U.S.C.§ 2254(b)(1), which provides, *inter alia*, that habeas

relief "shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State . . . ."  The other statutory provisions providing exceptions to the exhaustion rule are inapplicable here.

Petitioner's first claim is that he was denied effective assistance of counsel, in violation of the Sixth amendment, when his trial attorney failed to investigate and subpoena certain alibi witnesses.  This claim was presented with the same factual and legal articulation to the Louisiana state courts as they appear before this court, along with a request for an evidentiary hearing so that he might be able to show prejudice, first in his application for post-conviction relief to the Orleans Criminal District Court, and in appeals from that court's December 14, 2004 judgment to the Court of Appeal, Fourth Circuit, and the Louisiana Supreme Court.  The Louisiana Supreme Court denied this claim without elaboration on February 10, 2006.  *Delone v. State*, 924 So.2d 158 (La. 2006).  Thus, the claim is legally and factually exhausted.

Petitioner's second claim is that the evidence presented by the state at trial was insufficient and failed to negate any reasonable probability of misidentification.  This claim was presented with the same factual and legal articulation to the Louisiana state courts as they appear before this court, in his direct appeal from his conviction to the Louisiana Court of Appeal, Fourth Circuit.  His application for writ was denied by the Louisiana Supreme Court on June 6, 2003.  *State v. Delone*, 845 So.2d 1084 (La. 2003).  Thus, the claim is legally and factually exhausted.

### III.  PETITIONER'S CLAIMS

#### A. Standard of Review

AEDPA revised 28 U.S.C.§ 2254(d)(1) and (2), furnishing new standards of review for questions of fact, questions of law, and mixed questions of law and fact for habeas petitions. The statute now provides that if a state court has adjudicated a claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under 28 U.S.C.§ 2254(d)(1). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  Questions of fact are reviewed under 28 U.S.C.§ 2254(d)(2). *Id.*

Regarding questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.§ 254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one. *Bell v. Cone*, 535 U.S. 685, 694 (2002) (internal citations omitted).

As to questions of fact, a state court's factual findings are presumed to be correct and a federal court "will give deference to the state court's decision unless it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Hill*, 210 F.3d at 485; 28 U.S.C.§ 2254(e)(1).

### B. Petitioner's First Claim: Ineffective Assistance of Counsel

Petitioner claims that he was rendered ineffective assistance of counsel in violation of his Sixth Amendment right to counsel when his trial counsel failed to investigate potential alibi witnesses.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate both (1) counsel's performance was deficient *and* (2) that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).  An analysis of an attorney's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  *Strickland*, 466 U.S. at 689.  "[I]t is necessary to judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Matthesson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  In this context, a

14

reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* Indeed, the Fifth Circuit has adopted the *Strickland* test holding: "[d]eficient performance is prejudicial only upon a showing  that but for counsel's errors, there is a reasonable probability that the ultimate result would have been different and that confidence in the reliability of the verdict is undermined." *Little*, 162 F. 3d at 860-61.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

It is important to note that petitioners bear the burden of proof when asserting a claim for ineffective assistance of counsel.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also, Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e., deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. *Strickland*, 466 U.S. at 697.  Furthermore, a claim of ineffective assistance of counsel is a mixed question of law and fact. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002), *cert. denied*, 538 U.S. 969 (2003).  Therefore, this Court must defer to the state court on these claims unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.§ 2254(d)(1).

Petitioner argues that he was denied his fundamental right to effective assistance and a fair trial when his trial counsel failed to investigate alibi witnesses.  Petitioner states that he

provided counsel with all the information regarding witnesses Dewanna Newman, Raymond Doucett, Harold Harris, Zeb Jones, Ronnie Sartain and Tiffany Wood, who were willing to testify, at their first meeting on June 23, 2000.  However, his trial counsel simply ignored his witnesses and failed to investigate and subpoena them.  Although Tiffany Wood, petitioner's girlfriend and the mother of his child, did testify, petitioner states that this was only because she was present at his trial.  Petitioner argues these other witnesses were essential to corroborate his alibi defense and Ms. Wood's testimony.  Petitioner claimed that he had become so drunk at a club the previous night that he required a friend to take him home to his girlfriend at 2:00 a.m. the night before the February 6 robbery.  She testified that he was so drunk that he remained in her home passed out or asleep for much of the next day, including at the time of the robbery, which occurred at approximately 6:00 a.m.  Apparently, these witnesses would have corroborated the petitioner as to various portions of his version of events.

The district court that reviewed petitioner's application for post-conviction relief, which consisted of this ineffective assistance of counsel claim, ruled succinctly that such a claim did not lie: "Proper standard for attorney performance is that of reasonably effective assistance. Defense  counsel's strategy was reasonable and thus defendant was not denied effective assistance of counsel." Judgment of Criminal District Court for the Parish of Orleans, December 14, 2004 State Rec. Vol. 1.  The Court of Appeal, Fourth Circuit denied petitioner's application for supervisory writ from this judgment, stating "Relator has failed to carry his burden of proof that counsel's performance was so deficient as to deprive him of a fair trial.  Relator has failed to show prejudice," and finding that there was no error in the district court's judgment.   The

petitioner argues that these rulings were an unreasonable application of *Strickland*. He cites *Nealy v. Cabana*, 764 F.2d 1177 (5th Cir. 1985), and *Gomez v. Beto*, 462 f.2d 596 (5th Cir. 1995), arguing that in order for counsel to be effective, the attorney must engage in an independent investigation of the facts and circumstances in the case. Further, a court's focus in determining the deference to be given counsel's strategic judgments in failure to investigate claims is "whether the investigation supporting counsel's decision ... was itself reasonable." *Wiggins v. Smith*, 539 U.S. 510, 523 (2003). Petitioner argues that the record does not reflect that it was counsel's trial strategy not to contact witnesses to support his defense of an alibi, and that even if this could be considered a trial strategy at all, it was made uniformed because counsel never spoke to any of these witnesses or investigated the case in order to determine the possible effect of their testimony on the jury. Petitioner's sole defense was his alibi defense. Thus, his counsel's performance was evidently deficient.

He then argues that the second prong of *Strickland* is met because these witnesses, if called, could have corroborated his theory and alibi defense. Instead, the state was able to use the absence of these witnesses against him, as if he had made up the entire story.

Finally, petitioner states that if this Court finds that the record is not clear enough on whether both *Strickland* prongs are satisfied, he requests an evidentiary hearing. He made similar requests to the Louisiana Fourth Circuit and Supreme Court that the case be remanded to the district court to conduct an evidentiary hearing so his claim of ineffective assistance of counsel as to the prejudice prong could be shown, citing a similar grant of evidentiary hearing in *Bryant v. Scott*, 28 F.3d 1411 (5th Cir. 1994). *See* Application for Supervisory writ to the Court

of Appeal, Fourth Cir., at 17, Application for writ of certiorari, at 16, State Rec. Vol.1

The state argues that the finding of the trial court, that the decision on the part of petitioner's trial counsel not to call additional witnesses to corroborate Delone's alibi was part of a reasonable, effective trial strategy, which under *Strickland* is given highly deferential scrutiny, was reasonable.  Though the trial court itself did not elaborate on this finding, the state now argues it was a reasonable strategy because:  As the defendant's own defense makes clear, the only witness who could place petitioner at the residence of Tiffany Woods at the time of the robbery was Ms. Woods herself,  and she did testify to this effect.  At most, the other witnesses could testify that they left the petitioner at Ms. Wood's home several hours before the robbery, and such testimony would be hearsay, circumstantial, and cumulative at best.

The Court first examines whether petitioner has satisfied the first prong of the *Strickland* test, that his counsel's performance at trial was so deficient such that he made errors so serious that he was not functioning as "counsel" guaranteed by the Sixth Amendment.  Petitioner's point,  that if in fact his counsel did fail to investigate the potential of other witnesses petitioner had alerted him to this failure could hardly be considered a reasonable trial strategy, is well taken.  But in this case there was not so clear a failure to investigate as there was in the cases petitioner cites, *Nealy* and *Gomez*.   Petitioner's counsel did call Ms. Woods, the only person who could testify to Delone's alibi defense regarding his whereabouts at the very time of the February 2000 robbery.  The Court only has petitioner's own word that he told his counsel of other potential witnesses.  Assuming that he did, counsel may have made the strategic choice that the testimony of those witnesses would not have added much to Ms. Wood's testimony, or

18

that it may, in fact, have harmed him.  Delone himself (and over his counsel's objection) testified

to a possible reason why counsel may have chosen not to call some of Delone's friends:  when

asked on cross-examination why his friends were not in trial to testify on his behalf, he

answered, "Because they got prior convictions and stuff  - - - and they ain't going to stand on

this stand."  Tr. trans. at 103, State Rec. Vol. 2..  Trial counsel may have concluded that the

testimony of Delone and his girlfriend may have been more convincing  to the jury without the

testimony of others, some of whom apparently had prior convictions.  In fact, the choice of

counsel to put Delone himself on the stand, despite the risk, is indicative of strategy.  Delone had

three prior convictions, for possession of crack cocaine, possession of a firearm by a convicted

felon, and for simple criminal damage.  *See id.* at 100.  Despite this, counsel appears to have

made the strategic choice to call him, and in doing so immediately asked Delone about his prior

convictions so as to get them out of the way and prevent the prosecution from undermining his

credibility on cross-examination.

  As further "confirmation of counsel's poor performance," Rec. Doc. 1 at 11, petitioner

cites a brief portion of Ms. Wood's testimony under cross-examination, seemingly to suggest he

was unprepared for trial because Ms. Wood's was unaware that she was to testify until the very

day of trial.[5]  However, Ms. Wood's appears to have been somewhat confused by the

---

[5] "Q: Have you and Mr. Delone discussed your testimony today?
 A: No.
 Q: At what point did you realize you were going to come in here and testify on his behalf?
A. At what point did I found out?  I found out today.
Q: Today?
A: Yes."
Tr. trans. at 113, State Rec. Vol. 2.

prosecutor's questions, and this quote is taken out of context.  She later clarified that she had repeatedly discussed with defense counsel that she was with Delone at the time of the February 2000 robbery.  *Id.* at 115 - 116, 116-117.   It thus appears that defense counsel had investigated and prepared for Ms. Wood's testimony at trial.

Even though the Court is disturbed by the possibility that defense counsel may not have fully prepared or investigated all potential witnesses, it can not conclude that the state courts were unreasonable in deciding that counsel was not deficient.  In any event, for petitioner to prevail on this claim, he must demonstrate that both prongs of the *Strickland* test are met, and as discussed below, the Court finds that petitioner has not established that any possible deficiency in counsel's performance prejudiced him.

The Louisiana Fourth Circuit also found that petitioner had failed to establish that if trial counsel's performance was deficient, he was prejudiced by it at trial.  The state argues that this finding was also reasonable, because the petitioner failed to prove that the witnesses he believes could have supported his alibi were in fact available and willing to testify on his behalf on the day of trial.  Rec. Doc. 9, at 9.  Though he lists several witnesses who he asserts were willing to testify, he has produced no affidavits from those witnesses and offered no proof other than his bald assertion that their testimony would have been to his benefit.  *Id*.

The state is right to note that the only person who could have corroborated the petitioner's claim that he was passed out in bed at the time of the second robbery, Ms. Woods, did testify, and the jury was able to evaluate her testimony and credibility.  However, at trial the

prosecutor questioned her motive for testifying as she did[6] and thus her credibility had been attacked. Testimony from individuals who were with the petitioner that night that he became so drunk that he "beg[a]n to sweat and vomit," that he required assistance, and that he was not taken home until 2:00 a.m., if there were in fact such individuals who were willing to so testify, would clearly have bolstered Ms. Woods,' and petitioner's own, testimony concerning his alibi.[7] The evidence against Mr. Delone at trial was almost entirely the eye-witness testimony of the two victims, Cindy and Prosper Cole.  No weapon or other physical evidence was produced against him.  Though their testimony and confidence that he was the perpetrator (or one of them, in the case of the second robbery), is quite strong (see discussion below), the trial rested mainly on the credibility of witnesses of either side.  The jury seems to have determined that Cindy and Prosper Cole were more credible.  But the Court is concerned about the possibility that defense counsel did not investigate and subpoena witnesses who could have testified in support of Delone's defense.

---

[6] From the cross-examination of Tiffany Woods:
> Q: Are you still with Troy Delone? Y'all still a couple?
> A: Yes.
> Q: Are you in love with Troy Delone?
> A: Yes.
> Q: Do you want to see him get convicted in this case?
> A: Do I want to see him convicted? No, I don't want to see him convicted.  I don't want to see nobody convicted really.

Tr. Transcript at 116, State Rec. Vol. 2.

[7] The state argues that any such testimony would be hearsay, circumstantial, and cumulative.  Because it is unclear from the state record who might have been willing to testify as to what, it is also not clear such testimony would be hearsay.  Though testimony regarding what petitioner was doing earlier the morning of the robbery and the night before might only be circumstantial evidence of his alibi, or that he could not have committed the crime, it could also be quite strong.  And as noted above, Ms. Wood's credibility and motive was called into question by the prosecutor.  Thus any testimony from other witnesses, even if cumulative, could have been important.

Thus an important question for this Court in determining whether petitioner was prejudiced by his trial counsel's failure to investigate and subpoena witnesses is whether such witnesses were willing to testify as he says they were.  A noted above, the petitioner bears the burden of proof when asserting a claim for ineffective assistance of counsel, that is, he must demonstrate by a preponderance of the evidence both prongs of his claim.   The Court would find the state's claim that petitioner "has produced no affidavits" from the witnesses he claims could have testified on his behalf and "offered no proof other than his bald assertion that their testimony would have been to his benefit" highly persuasive if it could verify this claim. However, in his application for post-conviction relief to the district court he states "DeWanna and Ashaki Newman were willing to testify, however, counsel failed to contact either of the two. [See exhibit "B" and "C"]."  Unfortunately, his application is included in the state record, at least in the condition it is now in before this Court, only as an attachment to the application for writ to the Louisiana Supreme Court.  The Court could not find exhibits "B" and "C" cited by petitioner, apparently  some sort of evidence of the fact that DeWanna Newman and Ashaki Newman were willing to testify on his behalf, in the state record.  Thus the Court can not conclude with any certainty that petitioner did not put forth enough evidence - perhaps they were affadavits - in an attempt to demonstrate prejudice, at least to justify an evidentiary hearing in the state district court.  While the state says he did not, the Court cannot properly rely on that alone.  The cursory rulings of the state trial, appellate, and supreme courts leaves this Court with little to evaluate whether their decisions, based on as little or more than is now before it, were unreasonable applications of *Strickland* based on the petitioner's failure to put forth proof of other witnesses

and their potential testimony.

In the end, however, the Court notes that petitioner has not even claimed that there were witnesses that could have supported an alibi defense with regards to the first, October 1999 robbery, nor presented (or claimed that he presented) any proof that they would testify to his benefit.  In light of the confidence of the victims' testimony (discussed below), including the assuredness of Cindy Cole that it was the same person, Troy Delone, who robbed her in October, who threatened her, and who robbed her brother within her sight on February 6, 2000, the Court finds that the state courts were reasonable in finding that petitioner did not meet his burden in demonstrating the prejudice prong of *Strickland*.  Petitioner describes all of the individuals who he says would have testified on his behalf as his friends; thus each of them, though to a lessor degree, might have been attacked for having the same motive to testify that Ms. Woods did.  The state trial courts may have concluded that the jury would not have given much weight to their potential testimony, at best circumstantial evidence that Delone could not have committed the February 6, 2000 robbery, compared with the strength of the Coles' testimony.   That is, petitioner has not shown that but for any possible errors of his trial counsel, that there is a reasonable probability that the result of the trial would have been different.  Consequently, petitioner's claim of ineffective assistance of counsel is dismissed.

**C. Petitioner's Second Claim: insufficient evidence at trial and failure to negate any reasonable probability of misidentification.**

The Court approaches this sufficiency of the evidence claim as a mixed question of fact and law, and thus reviews the state court decisions for unreasonable application of clearly

established Federal law in this situation, *Jackson v. Virginia*, 443 U.S. 307(1979).  Under

*Jackson*, the question for the state courts was whether, after viewing the evidence in the light

most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt.  *Id.* at 319.  In addition, this test does not mean

that the prosecution is under an affirmative duty to rule out every hypothesis except that of guilt

beyond a reasonable doubt.  *Id.* at 326 (*citing Holland v. United States*, 348 U.S. 121 (1954)).

Furthermore, a federal habeas court, in reviewing whether the evidence was sufficient as to each

element, must address that question gauged in the light of the applicable state law defining that

element.  *See id.*, at 324.  When identity is disputed, the state must negate any reasonable

probability of misidentification as part of satisfying its burden of establishing every element of

the crime charged beyond a reasonable doubt.  *State v. Smith*, 430 So.2d 31, 45 (La. 1983); *State

v. Brady*, 414 So.2d 364, 365 (La. 1982).

      Petitioner argues that the state failed to negate any reasonable probability of

misidentification:  The first, October 1999, robbery, occurred at night, and Ms. Cole was

concerned with her two small children such that her attention could not have been completely on

the perpetrator.  Even though the perpetrator followed her into the residence, she does not state

that the lights were on inside.  Delone claims that she clung to her first impression, that he was

man who robber her, throughout the proceedings.  In addition, according to Detective Doucette's

police report, Ms. Cole originally told him the assailant had three gold teeth at the top of his

mouth.  Tr. trans. at 31, State Rec. Vol. 2.  But at trial, Ms. Cole denied telling this to the police

officer.  Delone claims he had never had gold teeth.

The second robbery also took place when it was dark outside, at approximately 6:00 a.m. on a winter morning.  Delone claims that Ms. Cole could not have seen him well, but that she nonetheless unduly influenced her brother's identification testimony.  One of the two individuals who Cindy and Prosper Cole identified as participating in this robbery, Bradley Newman, testified that he did not know Delone well, except by sight, and had not been with him on February 6, 2000.  He testified that he had heard that a person named "Joe" may have committed the robbery.  *Id.* at 95.  Finally, Tiffany Woods testified that Delone was asleep with her at the time of the February robbery.  Based on all of this, Delone claims there was a reasonable probability of misidentification that the state failed to negate, such that no rational jury could have found that he had committed these crimes beyond a reasonable doubt.

The state appellate court (affirmed without comment by the Louisiana Supreme Court) employed the appropriate test for insufficiency of the evidence claims by applying *Jackson*. Because the conviction relied almost entirely on the identifications of Delone by Cindy and Prosper Cole, it further applied the five-factor test to determine whether an identification was reliable set forth by the Supreme Court in *Neil v. Biggers*, 409 U.S. 188 (1972): (1) the opportunity of the witness to view the assailant at the time of the crime: (2) the witness' degree of attention: (3) the accuracy of the witness' prior description of the assailant: (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation.   The Louisiana Fourth Circuit applied this test to the identifications of Delone by both Cindy and Prosper Cole, and concluded that there was clearly sufficient evidence for the jury to find, beyond a reasonable doubt, that Delone committed the offenses.  The Court finds

25

that this conclusion was not unreasonable.

The entire record shows a much stronger case against petitioner than his summary of the evidence would suggest, especially when considering all of the testimony in the light most favorable to the prosecution.  Both Cindy and Prosper Cole were clear, consistent, and certain throughout the trial that Delone had committed the robberies.  Cindy Cole, the victim of the October 1999 robbery, knew her assailant before he robbed her;  she had seen him around the area and he had even used her phone at one time.  *Id*. at 58.  Though she hesitated before reporting that first crime to the police, she initially identified him readily and with ease to the police, *id*., in a photographic lineup, *id.* at 59, and in court.  *Id.* at 59, 119.  She recognized him immediately again when he robbed her brother in February, *id.* at 60, and indicated she had a good look at him.  *Id.* at 62-3.  He also approached her and threatened her after the robbery.  *Id.* at 64.  Prosper was similarly clear in his identification of Delone as his robber, in court, at a photographic lineup, and from an incident after the robbery in which Delone threatened him.  *Id.* at 75, 78, 80, 84.

It appears that at trial, the defendant tried to suggest through the cross-examination of several witnesses that another person who Cindy Cole had seen wearing her brother's stolen clothes, named "Joe," might have been responsible for the robbery(ies).  However, Cindy and Prosper both made clear that "Joe," whom they understood to have unknowingly bought Prosper's clothes from the robbers, was not himself involved in the robbery.  *Id.* at 71, 79, 91.

The state appellate court addressed the one factor that weighed towards the possibility of

misidentification.  Detective Doucette testified that his police report indicated that Ms. Cole had initially stated that her attacker had gold teeth, and Delone denied ever having gold teeth.  At trial, however, Ms. Cole denied she had ever described her attacker as having gold teeth.  *Id.* at 68.  The appellate court appropriately concluded that the jury had been able to weigh all of the evidence and testimony and decide that Ms. Cole's testimony concerning her identification was more credible.

The Louisiana Fourth Circuit concluded that the strong and consistent testimony of the victims, compared with the testimony of the petitioner and his witnesses, was sufficient evidence upon which the jury could reach the conviction.  Court of Appeal, Fourth Circuit, Decision, May 15, 2002, at 8, State Rec. Vol. 2.  Based on a review of the record, the Court agrees, and finds that this was not an unreasonable application of clearly established federal law.   Petitioner's claim of insufficiency of the evidence is dismissed.

### IV. CONCLUSION

Having considered the petition, the record, and the applicable law, the Court determines that the petitioner has not established that his state conviction and sentence present grounds for the relief requested.  Accordingly,

IT IS ORDERED that the petition of Troy Delone be hereby DENIED WITH PREJUDICE.  Judgment will be entered accordingly.

New Orleans, Louisiana, this 28th day of November, 2007.

HELEN G. BERRIGAN

UNITED STATES DISTRICT JUDGE